CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
2/29/2024
LAURA A. AUSTIN, CLERK
BY: s/ C. Amos
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| NA'STARJA S.,[1] | ) |
|     Plaintiff, | ) Civil Action No. 6:22-cv-52 |
| v. | ) REPORT & RECOMMENDATION |
| MARTIN O'MALLEY,[2] | ) By: C. Kailani Memmer |
| Commissioner of Social Security, | ) United States Magistrate Judge |
|     Defendant. | ) |

Plaintiff Na'starja S. ("Na'starja"), proceeding *pro se*, filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433; 1381–1383f. Na'starja alleges that the Administrative Law Judge Anthony Johnson, Jr., ("ALJ") erred by failing to properly weigh her treating physicians' opinions.

This case is before me on referral under 28 U.S.C. § 636(b)(1)(B), dated October 10, 2023. ECF No. 19. Na'starja did not request oral argument in this case. *See* ECF No. 14. Having considered the administrative record, the parties' filings, and the applicable law, I find that the Commissioner's decision is supported by substantial evidence.

---

[1] Due to privacy concerns and because social security opinions often contain intensely personal medical information about claimants, I use only the first name and last initial of the claimant in such opinions.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Accordingly, and for the reasons detailed below, I respectfully recommend **GRANTING** the Commissioner's Motion for Summary Judgment, ECF No. 17; **DENYING** Na'starja's Motion for Summary Judgment, ECF No. 14; **AFFIRMING** the Commissioner's final decision denying Na'starja's DIB and SSI claims; and **DISMISSING** this case from the Court's active docket.

## STANDARD OF REVIEW

The court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Na'starja failed to demonstrate that she was disabled under the Act.[3] *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). While substantial evidence is a somewhat deferential standard, the Court does not "reflexively rubber-stamp an ALJ's findings." *Lewis v. Berryhill*, 858 F.3d 858, 870 (4th Cir. 2017).

"In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period for not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work; instead, a claimant must show that her impairments prevent him from engaging in all forms of substantial gainful employment given her age, education, and work experience. *See* 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[Commissioner]." *Mastro*, 270 F.3d at 176 (quoting *Craig v. Chater*, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. *Hays v. Sullivan*, 907 F. 2d 1453, 1456 (4th Cir. 1990).

In contrast, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" where the court is "left to guess [at] how the ALJ arrived at his conclusions"). The ALJ must sufficiently articulate his findings such that the district court can undertake meaningful review. *See Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).

## **CLAIM HISTORY**

Na'starja filed for DIB and SSI on February 20, 2020, claiming her disability began on March 29, 2019. R. 146. The Commissioner denied Na'starja's claim initially and on reconsideration. R. 146, 157, 168, 179. On November 15, 2020, Na'starja requested a hearing before an ALJ. R. 213–14. On March 3, 2021, Na'starja appeared before the ALJ by telephone; however, this hearing did not proceed fully because Na'starja's counsel at that time, James Bowman, did not appear. R. 60–65. On June 9, 2021, Na'starja again appeared before the ALJ with her counsel. R. 66–91. Diana Sims testified as an impartial vocational expert. R. 83, 87–90.

The ALJ issued an "Unfavorable Decision" analyzing Na'starja's claim under the familiar five-step process[4] on June 29, 2021, and denied Na'starja's claim for benefits. R. 34–52.

The ALJ found that Na'starja meets the insured status requirements of the Act through June 30, 2021. R. 40. At the first step, the ALJ found that Na'starja had not engaged in substantial gainful activity during the period since March 29, 2019, the alleged onset date. *Id.* At the second step, the ALJ found that Na'starja has the following severe impairments: Chiari malformation, epilepsy, migraines, obesity, borderline intellectual functioning, learning disorder, and anxiety disorder. *Id.*

As to the third step, the ALJ found that Na'starja's impairments, either individually or in combination, did not meet or equal a listed impairment. R. 41. The ALJ specifically considered Listing 11.02 (epilepsy), 12.05 (intellectual disorder), 12.06 (anxiety and obsessive-compulsive disorders), and 12.11 (neurodevelopmental disorders). R. 41–42. Additionally, while there is no listing for obesity, the ALJ considered Na'starja's obesity in conjunction with other related impairments and in the context of the overall record. R. 41. The ALJ found that Na'starja has moderate limitations in understanding, remembering, or applying information; interacting with

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. *Johnson v. Barnhart*, 434 F.3d 650, 654 n.1 (4th Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1520); *Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a *prima facie* case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the national economy. 42 U.S.C. § 423(d)(2)(A); *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975).

others; concentrating, persisting, or maintaining pace; and in adapting or managing oneself. R. 42.

The ALJ next concluded that Na'starja has the residual functional capacity ("RFC") to:

> Perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except she is able to lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk six hours in an eight-hour workday and sit six or more hours in an eight-hour workday. She is unable to perform work involving hazards such as unprotected heights or moving machinery. She is able to understand, remember and carry out simple and routine work related instructions, and concentrate for periods of two hours on work related tasks. She is able to perform non-production, non-assembly line pace jobs with occasional workplace changes, occasional independent decision-making, and no responsibility for the safety of others. She is able to work with the general public, coworkers, and supervisors frequently.

R. 44.

At step four, the ALJ found that Na'starja had no past relevant work. R. 51. At the fifth step, the ALJ identified jobs in significant numbers in the national economy that Na'starja could perform, including positions as mail sorter, marker, or office helper. R. 52. Thus, the ALJ determined that Na'starja was not disabled. *Id.* The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Na'starja's request for review on July 22, 2022. R. 1–3.

## ANALYSIS

Na'starja argues that the ALJ erred by failing to grant proper weight to the opinions of her treating physicians. ECF No. 14 at 1.

### A. Medical History Overview

Na'starja was born on June 26, 1999. R. 286. In November 2007, Na'starja, then eight-years old, was found to be disabled and entitled to SSI. R. 100. In an April 2, 2019 decision, an ALJ found that Na'starja had achieved medical improvement and, as of November 19, 2015, no

5

longer qualified for child's benefits. R. 101. That same ALJ found that Na'starja did not qualify for disability benefits under the standards for adult disability. R. 120–28. Na'starja appealed that decision, which was subsequently affirmed by this Court. *See Na'Starja S. v. Comm'r of Soc. Sec.*, No. 6:20-cv-8, 2021 WL 4513636 (W.D. Va. July 27, 2021) (Ballou, M.J.).

Regarding Na'starja's epilepsy, medical records from UVA University Hospital East dated March 2016 indicate that Na'starja suffered from seizures since age 7 and her epilepsy was treated with Keppra. R. 754. Na'starja experienced several seizures associated with missed Keppra doses. *Id.*

Na'starja has a partial high school education. R. 291. During the relevant period, she worked part-time as a cashier at Target. R. 72–74. While working part-time, Na'starja also provided care for her infant daughter. R. 81, 320, 368. At the administrative hearing, Na'starja indicated that she is able to do laundry. R. 81. She also testified that, although she is allowed to drive, she does not do so because she does not feel comfortable driving. R. 79.

In November 2015, E. Wayne Sloop, Ph.D., P.C., completed a psychological evaluation of Na'starja. R. 454–59. During this time, Na'starja was still in high school. Dr. Sloop noted that Na'starja was below grade level in math, reading and written language, and received special education services. R. 454. Na'starja reported "growing out" of her seizure disorder. R. 455. She reported anxiety over her grades, occasional irritability, and some symptoms of depression. *Id.* She indicated some panic attacks after a 2014 motor vehicle collision, but she had not experienced one in "a long time now." *Id.* Na'starja reported experiencing migraine headaches three or four times per month. *Id.* At that time, Dr. Sloop diagnosed Na'starja with borderline intellectual functioning and adjustment disorder with mixed anxiety and depressed mood. R.

457–58. Dr. Sloop noted that Na'starja had no problem with expressive or receptive language, no problems with gross or fine motor skills, and adequate social functioning. R. 458. Dr. Sloop noted that Na'starja had appropriate self-care skills and that she does well in the areas of concentration, persistence, and pace for task completion. *Id.*

In April 2019, Na'starja presented to the care of Pallavi Suvarna, M.D., one of her treating providers, for a well woman exam and requested a letter to state that she cannot work more than 20 hours. R. 574, 576. Her physical examination at that time was unremarkable. R. 577. Dr. Suvarna agreed to provide the disability letter; however, she "stressed that further notes will need to be obtained from [Na'starja's] neurologist as they would be more well informed to make this decision." R. 575.

The evidence in the record indicates that Na'starja's epilepsy and migraines were generally controlled with medication. R. 694, 754, 812–13. Medical records from Na'starja's neurologist indicate that Na'starja had not experienced a seizure for three years before she experienced a breakthrough seizure in February 2018. R. 694. Na'starja was pregnant at that time and had been taking a new medication, which she stopped taking after she became concerned about decreased fetal movement. R. 694; 717. During that time, Na'starja was "strongly advised to continue her anti-epileptic medication." R. 615. From February 2018 to January 2020, Na'starja had not experienced any seizures. R. 688. Likewise, after Na'starja began taking 75 mg Lamictal BID, which she tolerated well, she reported to her treating neurologist that her headaches were "no longer a problem." *Id.* Her neurological exam was unremarkable, and her providers reiterated that her episodic migraines were acceptably controlled with magnesium and riboflavin. R. 695–96.

7

In April 2020, Bert Spetzler, M.D., reviewed Na'starja's medical record and concluded that she had no exertional limitations and so could perform heavy work; however, he opined that Na'starja did have postural limitations. R. 152. Such limitations included that Na'starja should never climb ladders, ropes, or scaffolds due to her seizure disorder and migraines; that she could only occasionally climb ramps or stairs; and that Na'starja should avoid moderate exposure to environmental hazards due to her seizure disorder and migraines. R. 152–53.

In May 2020, Na'starja presented to the care of Mallory Stewart, D.O., one of her treating providers, with complaints of nose bleeds and a request for paperwork for work restrictions. R. 850–52. At that time, Na'starja noted that her mood was "doing well overall." R. 850. She had a child at home who weighed about 25 pounds that Na'starja was able to lift without difficulty. R. 851. Dr. Stewart provided Na'starja with nasal spray for the nose bleeds and completed the work forms Na'starja requested. R. 853.

Regarding Na'starja's anxiety, the record indicates that her condition generally improved with medication. R. 678. Additionally, Na'starja has previously described her anxiety as "mild," and that it did not include symptoms such as difficulty concentrating, excessive worry, fatigue, insomnia, shaky hands, sweaty palms, or sleep disruption. R. 677.

### B. The Commissioner's Decision is Supported by Substantial Evidence

Na'starja argues that the ALJ failed to grant proper weight to the opinions of her treating and examining medical sources. ECF No. 14 at 1.

When reviewing whether an applicant is eligible for disability benefits, the ALJ will evaluate all evidence relevant to an applicant's claim. *See* 20 C.F.R. § 404.1520b. The ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical

opinion(s) . . . including those from [an applicant's] medical sources." 20 C.F.R. §§ 416.920c(a), 404.1520c(a). ALJs are required to consider whether a physician's opinion is (1) supported and (2) consistent with the record as a whole.[5] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Here, the ALJ properly considered the opinions of Na'starja's treating physicians through the appropriate lens of supportability and consistency under 20 C.F.R. §§ 404.1520c and 416.920c. First, the ALJ considered the opinion of Dr. Stewart, who opined that Na'starja can lift up to 25 pounds for four to seven hours during a workday; sit and stand four hours or less; cannot kneel, squat, or use ladders and stars; reach overhead less than four hours; use power tools ; grasp, grip, and outstretch her arms four hours or less; cannot operate machinery; and must have a water bottle. R. 870. The ALJ concluded that he was "not fully persuaded" by Dr. Stewart's opinion because the evidence in the record indicates that Na'starja was not so limited in the ability to sit, stand, kneel, squat, use stairs, reach overhead, and perform manipulative tasks. *See* R. 49. The ALJ correctly pointed out that physical examinations of Na'starja are unremarkable. *See* R. 556, 577, 594, 608, 828, 851. Additionally, Na'starja has not experienced a seizure in several years, and her headaches were largely resolved with medication. R. 688. Thus, the ALJ concluded that Dr. Stewart's opinions were not consistent with the evidence in the record. *Id.* Furthermore, the ALJ found that Dr. Stewart did not provide sufficient support for her opinions. *Id.* Lastly, reviewing state agency medical experts concluded that Dr. Stewart's opinion on Na'starja's limitations was "an overestimate of limitations and considered partially

---

[5] In cases filed *before* March 27, 2017, a different regulation (*i.e.,* the "treating source" rule) governs this evaluation. However, that regulation is not applicable to this case because Na'starja filed for DIB and SSI in February 2020. In cases filed *after* March 27, 2017, like this one, 20 C.F.R. §§ 404.1520c, 4106.920c applies and the ALJ's analysis focuses on the "supportability" and "consistency" of treating providers' opinions.

9

consistent with the objective medical findings," and was "without substantial support from the medical source who made it, which renders it less persuasive." R. 174. I find that substantial evidence supports the ALJ's evaluation of Dr. Stewart's opinion.

The ALJ next considered the opinion of Dr. Suvarna, one of Na'starja's treating physicians, who opined in April 2019 that Na'starja could return to work, but that she was limited to no more than four hours of work per day. R. 49. The ALJ concluded that Dr. Suvarna's opinion is not consistent with the evidence, and that Dr. Suvarna does not provide support for her statements. *Id.* The ALJ points out that Na'starja's conditions have been controlled with treatment. *See* R. 678, 688, 694, 754, 812–13. Additionally, the ALJ noted that Na'starja's examinations were generally unremarkable. *See* R. 556, 577, 594, 608, 828, 851. I find that substantial evidence supports the ALJ's evaluation of Dr. Suvarna's opinions.

The ALJ also considered the opinion of Sabaina Arshad, M.D., another of Na'starja's treating physicians. R. 49. Dr. Arshad opined in a November 2017 letter (pre-dating Na'starja's onset date) that Na'starja should work for only 20 hours in a week and should not lift more than 25 pounds. R. 547, 794. The ALJ correctly points out that not only does the letter fall outside the relevant period, but Dr. Arshad also provides no support for the limitations described. R. 49. Examinations by Dr. Arshad during the relevant period reveal no medical concerns warranting such limitations, aside from Na'starja's 2018 pregnancy. R. 555, 613, 614, 615, 620, 625, 629, 647–48, 657–69. Additionally, a review of the other medical evidence available in the record provides no support for such limitations. Therefore, I find there is substantial evidence in the record to support the ALJ's evaluation of Dr. Arshad's opinion.

Lastly, the ALJ considered the opinion of Lydia McKay, PA-C, one of Na'starja's treating providers. R. 49. In a letter from August 2018 (pre-dating Na'starja's onset date), Ms. McKay indicated that Na'starja could return to work with a limitation of lifting no more than 20 pounds. R. 794. This limitation was provided to Na'starja after she underwent a C-section and was not intended as a permanent limitation because of Na'starja's other conditions. *See* R. 593–94, 607–09. As a result, I find there is substantial evidence to support the ALJ's evaluation of Ms. McKay's opinion.

Overall, the ALJ thoroughly considered and analyzed the opinions of Na'starja's treating physicians. R. 49. Because Na'starja's claim was filed after March 27, 2017, the ALJ was not required to assign any specific evidentiary weight to those treating physicians' opinions. 82 Fed. Reg. at 5853; 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ analyzed each treating provider's opinion through the lens of supportability and consistency, as he was required to do. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Here, the ALJ reviewed the opinions of Na'starja's treating providers and found those opinions to be unsupported and inconsistent with the evidence available in the record. I find that substantial evidence supports the ALJ's evaluation of those providers' opinions.

## CONCLUSION

For the foregoing reasons, I respectfully recommend **GRANTING** the Commissioner's Motion for Summary Judgment, ECF No. 17; **DENYING** Na'starja's Motion for Summary Judgment, ECF No. 14; **AFFIRMING** the Commissioner's final decision denying Na'starja's DIB and SSI claims; and **DISMISSING** this case from the Court's active docket.

**NOTICE TO PARTIES**

The clerk is directed to transmit the record in this case to Robert S. Ballou, United States District Judge, and to provide certified copies of this Report and Recommendation to counsel of record.

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party must serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal.

Entered: February 29, 2024

*C. Kailani Memmer*
C. Kailani Memmer
United States Magistrate Judge